*In the Matter of Broadway Services, Inc.*, No. 1299, Sept. Term 2023.  Opinion by
Arthur, J.

**APPEALABILITY—FINAL JUDGMENTS—REMAND TO AN
ADMINISTRATIVE AGENCY**

When a circuit court remands a case to an administrative agency, the question of whether
the remand is a final, appealable judgment often depends on whether the remand precedes
judicial review or whether the remand follows or results from judicial review.  Generally,
remands preceding judicial review are not final judgments, and remands following or
resulting from judicial review are final judgments.

In this case, the circuit court remanded a case to the Maryland Tax Court, an
administrative agency, on the ground that the agency had not adequately articulated the
basis for its conclusion.  The remand did not clearly precede or follow judicial review.

The Appellate Court of Maryland held that the remand was a final, appealable judgment.
The circuit court did not remand the case for further factual development.  Neither party
requested the remand; rather, the court ordered the remand on its own motion.  The
circuit court engaged in judicial review in the colloquial sense: it asked many questions
that went to the merits of the case, it disposed of an independent legal theory that would
have necessitated dismissal of the action, and it attempted to limit the discussion of the
merits to those issues that were still pending.  Finally, the court judged the agency's
decision to be defective in a technical, if not a substantive, sense in that the court believed
that the agency had not adequately articulated the basis for its decision.

**APPEALS—LAW OF THE CASE DOCTRINE**

The law of the case doctrine dictates that, once an appellate court rules upon a question
presented on appeal, litigants and lower courts are bound by that ruling.

In this case, the Comptroller of Maryland argued that the Supreme Court of Maryland, in
a previous opinion, rejected the taxpayer's theory that it was reselling cleaning supplies
to hospitals and should be entitled to a tax refund.

The Appellate Court of Maryland held that the Supreme Court did not rule on the reseller
theory and that the Court's comment on that theory was not the law of the case.  The
Court did not enunciate a holding with respect to the reseller theory in the "Conclusion"
section of its opinion.  Additionally, the Court invoked Md. Rule 8-131(a) to address a
different issue that was not properly before it.  It did not do so with respect to the reseller
theory.

## TAX-GENERAL ARTICLE § 11-101—INTENTION TO RESELL TANGIBLE PERSONAL PROPERTY

Maryland imposes a sales and use tax on a retail sale in the State. The Tax-General Article excludes a sale of tangible personal property from the definition of retail sale if the buyer intends to resell the property in the form that the buyer receives or is to receive the property.

In this case, the taxpayer purchased cleaning supplies and equipment in connection with contracts under which it provided janitorial services to three hospitals. The taxpayer argued that its purchases of supplies and equipment were not subject to sales and use tax because it was reselling the supplies and equipment to the hospitals. The tax court disagreed and rejected the taxpayer's request for a tax refund.

The Appellate Court of Maryland held that the circuit court should have affirmed the tax court's judgment. There was substantial evidence before the tax court to support its conclusion that the taxpayer did not resell the cleaning supplies and equipment. Witnesses testified that the supplies and equipment did not show up as line items in any monthly invoices that the taxpayer sent to the hospitals for the provision of management services. Moreover, there was no evidence that the taxpayer ever submitted resale certificates, which certify that a business is acquiring tangible personal property for the purpose of resale, with its purchases of cleaning supplies and equipment. A reasoning mind could find that the contracts were contracts for the provision of services, one of which includes the provision of cleaning supplies and equipment, rather than contracts for the resale of tangible goods.

Circuit Court for Anne Arundel County
Case No. C-02-CV-23-000019

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1299

September Term, 2023

_____

IN THE MATTER OF
BROADWAY SERVICES INC.

_____

Nazarian,
Arthur,
Zarnoch, Robert A.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: May 2, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This is an appeal from an order by which the Circuit Court for Anne Arundel County remanded an action for judicial review to the tax court because the circuit court was unable to discern the basis for the tax court's decision.

For the reasons stated herein, we conclude, first, that the remand order is a final judgment and, thus, that we have appellate jurisdiction. We further conclude that the circuit court erred in remanding the case to the tax court. Finally, we conclude that substantial evidence supported the tax court's decision on the sole issue before it. Consequently, we shall reverse the judgment of the circuit court and remand the case with instructions to enter a judgment affirming the tax court's decision.

## FACTUAL AND PROCEDURAL HISTORY

### A. The Comptroller's Audit

This case has already generated reported opinions from both of Maryland's appellate courts: *Broadway Services, Inc. v. Comptroller*, 478 Md. 200 (2022) (*Broadway II*); and *Comptroller v. Broadway Services, Inc.*, 250 Md. App. 102 (2021), *aff'd*, 478 Md. 200 (2022) (*Broadway I*). In the present appeal, the appellant is the Comptroller of Maryland; the appellee is a taxpayer, Broadway Services, Inc.

Broadway is a for-profit corporation that is wholly owned by a subsidiary of Johns Hopkins University and the Johns Hopkins Health System. Broadway provided services at three hospitals in the Johns Hopkins Health System. Those services include housekeeping, security, and property and facilities management.

As part of its contracts with the hospitals, "Broadway provided janitorial management, including furnishing cleaning supplies to the hospitals, managing overall

operations, and supervising janitorial staff." *Broadway II*, 478 Md. at 210. Broadway's obligations "included 'provid[ing] cleaning supplies and equipment to [the hospitals'] personnel performing housekeeping duties in and about the facility.'" *Id.* at 210-11. "Third-party vendors assessed sales tax on Broadway's purchases of cleaning supplies[.]" *Id.* at 211. Broadway paid the tax. *Id.*

"The vendors shipped the cleaning supplies directly to the hospitals for use by the hospitals' janitorial staff." *Id.* Broadway's employees did not clean the hospitals. *Id.* Instead, "Broadway supervised the cleaning operations, inspected the work done by janitorial staff, and ensured the janitorial staff correctly completed the work Broadway assigned." *Id.*

The hospitals and Broadway agreed upon an annual price for Broadway's services, and the hospitals paid Broadway in twelve monthly installments, each totaling one-twelfth of a lump-sum figure. *Id.* The contracts with the hospitals and Broadway's monthly invoices "did not contain an itemized breakdown of the costs, such as the specific costs of the cleaning supplies or of Broadway's management expenses." *Id.* Nor were the payments adjusted based on the actual costs incurred. *Id.* "Instead, any additional expenses above the agreed-upon annual rate factored into the following year's calculation." *Id.*

The Comptroller audited Broadway for the period from December 1, 2007, through November 30, 2011. As a result of the audit, the Comptroller assessed $9,073.93 in sales and use taxes. In response, Broadway asserted that it was actually entitled to a tax credit and refund of $76,161.96 because, it said, the Comptroller "improperly"

assessed sales tax on "services and products purchased for resale," which are exempt

from taxation. *See* Maryland Code (1988, 2022 Repl. Vol.), § 11-101(h)(3)(ii)(1) of the

Tax-General ("TG") Article (stating that the term "[r]etail sale" "does not include . . . a

sale of tangible personal property . . . if the buyer intends to . . . resell the tangible

personal property"). Those products, according to Broadway, were the cleaning supplies

and equipment that Broadway purchased for use by the hospitals' housekeeping

personnel.

The Comptroller denied Broadway's request; Broadway petitioned for judicial

review of the decision in the Maryland Tax Court.[1]

### B. The Tax Court's Decision

The case reached the tax court in 2017. There, Broadway reiterated its assertion

that it had purchased the cleaning supplies and equipment for resale to the hospitals,

making them tax-exempt purchases under TG § 11-101(h)(3)(ii)(1).

In addition to claiming an exemption as a reseller of the supplies and equipment,

Broadway told the tax court that it had acted as an agent of the hospitals, which are

exempt from the sales tax. Broadway argued that, as the hospitals' agent, it too was

exempt from the tax.

Near the conclusion of its closing argument in the tax court, Broadway briefly

mentioned *John McShain, Inc. v. Comptroller*, 202 Md. 68 (1953). *John McShain* holds

---

[1] "The Tax Court is an adjudicatory administrative agency in the executive branch of state government." *Comptroller v. Wynne*, 431 Md. 147, 160 (2013), *aff'd*, 575 U.S. 542 (2015) (internal quotation marks omitted); *accord Comptroller v. FC-GEN Operations Investments LLC*, 482 Md. 343, 358 (2022).

that "building materials, purchased by an intermediary contractor for use in constructing a building for a tax-exempt entity, were exempt from sales and use tax because the building materials were incorporated into the realty of the physical structure, and the exemption at issue emphasized the use of the property and not the exemption status of the user." *Broadway II*, 478 Md. at 228 (citing *John McShain, Inc. v. Comptroller*, 202 Md. at 74). By analogy to *John McShain*, Broadway argued that the cleaning supplies and equipment that it purchased for use by tax-exempt entities—the hospitals—should also be exempt from sales and use tax.

The tax court found in favor of Broadway. As is apparently the custom in that court, the judge delivered a brief and extemporaneous oral opinion that did not contain explicit findings of fact or conclusions of law.[2]

The tax court "ruled, without explanation, that Broadway's purchases did not satisfy the reseller exemption." *Id.* at 212.[3] The court agreed, however, that Broadway was acting as the hospitals' agent when it purchased the supplies and equipment. The court did not mention *John McShain*.

---

[2] Under the contested cases subtitle of the Administrative Procedure Act, a final decision or order in a contested case must contain separate statements of findings of fact and conclusions of law. Md. Code (1984, 2021 Repl. Vol.), § 10-221(b)(1) of the State Government Article. The contested cases subtitle does not, however, apply to the tax court. *Id*. § 10-203(a)(3)(vi).

[3] The substance of the tax court's express analysis of the issue is a single sentence in which it said, "I'm not going to call [the supplies and equipment] resold to [the hospitals]." *Id*. at 229.

The Comptroller pursued judicial review of the tax court's decision. On judicial review, the Circuit Court for Anne Arundel County affirmed. The Comptroller noted an appeal to this Court.

## C. *Broadway I*

On appeal to this Court, the only question presented was whether the tax court erred when it determined that Broadway was the hospitals' agent. *Broadway I*, 250 Md. App. at 109. This Court ruled that the tax court did err in finding an agency relationship. *Id.* Consequently, we reversed the tax court's decision. *Id.*

In arguing against reversal, Broadway had asserted that, even if it was not the hospitals' agent, we could still affirm the tax court's decision "based on the reseller theory that the Tax Court rejected." *Id.* at 132. In response, we noted that the tax court had "expressly considered and rejected Broadway's reseller argument" and that it would have been "inappropriate" to affirm the tax court's decision "on the grounds that the evidence *could have* supported a finding that the reseller exemption applied." *Id.* at 133 (emphasis in original). We also noted that we could not uphold the tax court's decision unless it was sustainable on the tax court's findings and for the reasons stated by the tax court—i.e., we could uphold the decision only on the agency theory, which we had rejected. *Id.*

We went on to question whether Broadway had the right to judicial review of the tax court's rejection of its reseller argument. We observed that, "[b]y statute, only 'a party who is aggrieved by the final decision' 'is permitted to seek judicial review.'" *Id.* at 134 (quoting Md. Code (2014), § 10-222(a) of the State Government Article).

5

Nonetheless, we questioned "whether Broadway could have preserved the reseller issue by filing a conditional cross-petition for judicial review" after the Comptroller put Broadway's status as a non-aggrieved party into jeopardy by filing its petition for judicial review. *Id.*

"Given the novelty of the issue and the absence of any briefing on [the] topic," we concluded that "Broadway should not be foreclosed of the right to seek judicial review of the Tax Court's rejection of its reseller theory." *Id.* at 134-35. Thus, we remanded the case to the circuit court "with instructions to vacate the final decision of the tax court and remand the case to the tax court with instructions to enter a new final decision denying Broadway's petition for a tax refund." *Id.* at 135. By directing the tax court "to enter a new final decision," we contemplated that Broadway would have the right to seek judicial review of the new decision in order to challenge the tax court's rejection of its reseller argument.

## D. Broadway's Petition for Certiorari

Broadway petitioned for a writ of certiorari on two issues:

1) Where tangible personal property is purchased by an intermediary contractor for the use of a non-profit charitable institution in carrying on its exempt purpose, are those purchases exempt from Maryland sales and use tax in light of *John McShain, Inc. v. Comptroller*, [202] Md. 68 (1953) under Md. Code § 11-204 of the Tax-General Article?

2) Were the Maryland Tax Court's factual findings supported by substantial evidence such that the purchases in question are exempt from Maryland sales and use tax?

Maryland's highest court, now known as the Supreme Court of Maryland, granted the petition on both issues. The Court did so even though neither the tax court nor this Court had considered the first issue, involving *John McShain*.

Neither the petition nor the grant of certiorari encompassed the reseller issue.

### E. *Broadway II*

On certiorari, the Court affirmed the judgment of this Court.

The Court began with the agency issue. Like this Court, the Court held that the tax court "erred in concluding that Broadway acted as an agent of the hospitals when it purchased cleaning supplies." *Broadway II*, 478 Md. at 210; *see also id.* at 227 (stating that "the Tax Court erred in deciding that Broadway, acting as an agent to the hospitals, should not have been charged sales and use tax[]").[4]

Turning to the issue of *John McShain*, the Court acknowledged that it could not affirm the tax court on that basis because the tax court did not rely on *John McShain* in its ruling. *Id.* at 228. The Court concluded, however, that "reaching the issue [was] in the interest of judicial efficiency[.]" *Id.* In support of that conclusion, the Court cited Maryland Rule 8-131(a), which states, in pertinent part, that an appellate court can consider an issue not raised in or decided by the trial court if "necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

---

[4] The Court added that "an agency relationship alone is insufficient for the agent to claim the principal's tax-exempt status." *Broadway II*, 478 Md. at 227. "For a tax-exemption to apply, the underlying act performed by the agent must still fit within an exemption set forth in the Maryland Code, and the parties to the agency relationship must comply with the procedures and requirements set forth in the Maryland Code when claiming a tax exemption." *Id.* at 227-28.

7

Before explaining why it would reach the *John McShain* issue, the Court discussed the limited scope of appellate review of agency decisions. The Court wrote that "the reviewing court 'may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.'" *Id.* at 229 (quoting *United Steelworkers of Am. AFL-CIO, Local 2610 v. Bethlehem Steel Corp.*, 298 Md. 665, 679 (1984)). The Court recognized that Broadway had briefly mentioned *John McShain* in its closing argument before the tax court, but it said that the tax court's "oral findings of fact and conclusions [did] not appear to be based on the *McShain* holding." *Id.*

The Court then discussed the tax court's ruling with respect to the reseller exemption. The Court wrote:

> The transcript shows that the Tax Court, without citing to the reseller exemption directly, dismisses the applicability of the exemption by noting that the Comptroller "was complaining [that Broadway] talked about agency. . . awfully late in the game. But, [from] my perspective it seems to be the only thing that make[s] sense." After considering each agency factor separately, the Tax Court continued, "[i]t's not a clear-cut decision, . . . But I'm going to suggest that these items were—I'm not going to call them resold to [the hospitals]. They were purchased as agents for [the hospitals] for the benefit of [the hospitals] so that they should not have been charged sales tax."

*Id.*

Next, the Court discussed the reseller theory and *John McShain* in tandem:

> The Tax Court's findings are devoid of direct analysis and conclusions pertaining to the reseller exemption and clearly demonstrate that, from the Tax Court's perspective, the agency theory was the only viable theory to support refunding the sales tax Broadway paid for its cleaning supplies purchases. Under this Court's general method of reviewing agency decisions, we cannot affirm the Tax Court's decision on *McShain* grounds because the Tax Court did not rely on *McShain* to reach its conclusion. We decline to substitute our own judgment for that of the Tax Court, especially

8

regarding the applicability of the reseller exemption, which is within the Tax Court's ambit and therefore entitled to deference. *Frey* [*v. Comptroller*], 422 Md. [111,] 138, 29 A.3d 475 [(2011)].

*Id.* at 230.

The meaning of the final sentence of that paragraph—in which the Court stated that it would not "substitute [its] judgment for that of the Tax Court, especially regarding the applicability of the reseller exemption"—is a central issue in this appeal.[5]

The Court completed its discussion of *John McShain* and ultimately found that any "similarities between *McShain* and the facts at hand . . . do not withstand scrutiny." *Id.* at 233. The Court declined to extend *John McShain* on this occasion. *Id.*

In the section of the opinion titled "Conclusion," the Court reiterated its holdings in specific terms. The Court "h[e]ld that the Tax Court erroneously conducted its agency analysis as a matter of law." *Id.* at 234. Additionally, the Court "h[e]ld that *McShain* cannot serve as a proper basis to affirm the Tax Court" because the tax court based its decision solely on agency principles and not "on Broadway's theory of the reseller exemption or this Court's holding in *McShain*." *Id.* Finally, the Court held that, even if the *John McShain* arguments were properly before it, it "would not affirm [the tax court's decision] on those grounds[.]" *Id.* The Court affirmed the judgment of this Court.

---

[5] To the extent that the *Broadway II* Court was referring to deferring to the tax court's conclusions of law, that statement is no longer authoritative. In *Comptroller v. FC-GEN Operations Investments LLC*, 482 Md 343, 358 (2022), the Court held that, "in connection with judicial review of a Tax Court decision in which a party alleges an error of law, where the reviewing court determines that it is appropriate to give a degree of deference to an agency's interpretation of tax laws, the agency to [which] deference is owed is the Comptroller, as the agency responsible for administering the tax laws and promulgating regulations for that purpose, not the Tax Court."

## F. Remand to the Tax Court

On remand, the case returned to the tax court, which denied Broadway's petition for a sales and use tax refund in a one-sentence order. The tax court did not further explain its rationale for rejecting Broadway's contention that it had resold the supplies and equipment to the hospitals.

Broadway petitioned for judicial review in the Circuit Court for Anne Arundel County.

## G. The Circuit Court's Decision

The circuit court convened a hearing to consider the petition for judicial review. At the hearing, the court allowed both parties to present arguments about the reseller issue.

Broadway argued that "the only possible application of the facts to the statute" leads to the conclusion that Broadway was purchasing the cleaning supplies and equipment to resell them to the hospitals. The circuit court asked Broadway several hypotheticals about the reseller theory.

After Broadway answered the circuit court's hypotheticals, the court asked Broadway if it agreed that the "Tax Court[,] without any explanation[,] says Broadway's purchase didn't qualify for the reseller [exemption.]" Broadway replied that it disagreed with the proposition that the tax court ruled on the merits of the reseller exemption at all, calling that idea "a fiction the Appellate Courts adopted." The circuit court replied that it did not necessarily agree with Broadway's interpretation of the appellate courts' reasoning, but that it did agree that the tax court did not "in this last reiteration . . .

10

actually address the reseller exemption." The circuit court opined that the tax court rejected the reseller theory "without . . . telling [the court] why."

When the Comptroller rose to present its argument, the court immediately asked whether there was anything "for [the court] to review[.]" The Comptroller responded that the tax court "does give us some indication of what it's thinking." For example, the Comptroller observed, the record reflected that the relevant contracts required Broadway to "provide" (rather than sell) the supplies and equipment to contractual employees who were under Broadway's supervision, and the contracts do not describe the transactions as a "sale." The Comptroller emphasized that, in the tax court, Broadway did not present invoices evidencing a sale of the supplies and equipment. In addition, the Comptroller argued that Broadway did not produce resale certificates, which certify that a business is acquiring tangible personal property for the purpose of resale. *See* TG § 11-408(b)(1). The Comptroller argued that the circuit court could uphold the tax court's decision on these bases, given that "all we have to find here is that there was substantial evidence in the record to support the judge's conclusion."

The circuit court disagreed. The court said that its role was not to weigh evidence from the record, but rather "to look at[]" the tax court's decision and "the basis upon which [it] made [its] decision." The court acknowledged that the Comptroller had "pick[ed] items out of the testimony" that would support the tax court's conclusion, but told the Comptroller that "there's just as much or ample testimony on the other side[.]"

The court ultimately decided that it needed more information before it could decide whether to affirm or reverse the tax court. Although neither party asked it to do

11

so, the court remanded the case to the tax court "with instructions to explain its factual findings and legal reasoning which formulated the basis of the denial of Broadway's refund based on the reseller exemption." The court concluded the hearing by stating: "I don't disagree that there's ample [evidence] within the record for which [the tax court] might be able to make [its] findings. But I think you need to know what [the findings] are and we don't know what they are."[6]

On several occasions during the hearing, the Comptroller invoked "the law of the case," a doctrine that provides that, "once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling[.]" *Scott v. State*, 379 Md. 170, 183 (2004); *accord Holloway v. State*, 232 Md. App. 272, 279 (2017). The Comptroller contended that that doctrine precluded Broadway from relitigating the reseller issue because, the Comptroller said, the *Broadway II* Court had decided that the reseller exception did not apply. In support of that contention, the Comptroller cited the Court's statement, "We decline to substitute our own judgment for that of the Tax Court, especially regarding the applicability of the reseller exemption, which is within the Tax Court's ambit and therefore entitled to deference." *Broadway II*, 478 Md. at 230. The circuit court was unpersuaded that the *Broadway II* Court had affirmed the tax court's rejection of Broadway's reseller theory.

---

[6] The parties observed that the tax court judge who decided the case in 2017 is no longer with the court—and, in fact, only one of the judges who was on the court in 2017 was still on the court at the time. Consequently, to comply with the directions on remand, a judge who had not heard the case in 2017 would be required to review the record and to discern and articulate the bases for a former judge's opinion.

12

After the circuit court remanded the case to the tax court, the Comptroller noted a timely appeal to this Court.

## QUESTIONS PRESENTED

The Comptroller presents two questions for our review, which we quote:

1. Did the circuit court err when it remanded this case to the Tax Court when the Supreme Court of Maryland had already raised the resale issue *sua sponte* and declined to reverse the Tax Court ruling that the cleaning supplies and equipment were not resold to the hospitals[?]

2. Did sufficient evidence in the record support the Maryland Tax Court's decision that the resale exclusion did not apply to Broadway's purchases of tangible personal property, thereby obviating the need to remand the matter to the Tax Court[?]

For the reasons that follow, we reject the factual premise of the first question, because it assumes that the *Broadway II* Court decided the resale issue when this case was before it in 2022. We agree, however, that the tax court's conclusion, that Broadway did not resell the cleaning supplies and equipment to the hospitals, is supported by substantial evidence. Consequently, we shall reverse the judgment of the circuit court and remand the case with instructions to affirm the tax court's decision.

## DISCUSSION

### A. Appealability

Before addressing the questions presented on appeal, we must decide an issue that neither party raised: whether the circuit court order remanding the case to the tax court is a final, appealable judgment. "Because the absence of a final judgment may deprive a court of appellate jurisdiction, we can raise the issue of finality on our own motion."

13

*Zilichikhis v. Montgomery County*, 223 Md. App. 158, 172 (2015). We conclude that the order was a final judgment.

### 1. Final Judgments

In general, a party may appeal only "from a final judgment entered in a civil or criminal case by a circuit court." Maryland Code (1974, 2020 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article ("CJP"). CJP § 12-101(f) defines a final judgment as "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." "[A]s this definition implies, it is ultimately for [the appellate courts] to decide which judgments or orders are final and therefore appealable under section 12-301." *Cant v. Bartlett*, 292 Md. 611, 614 (1982) (citations and internal quotations omitted).

Among other things, a final judgment ordinarily "must be intended by the court as an unqualified, final disposition of the matter in controversy[.]" *Metro Maint. Sys. South v. Milburn, Inc.*, 442 Md. 289, 298 (2015) (citing *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)). To constitute a final judgment, however, an order "need not resolve the merits of a case[.]" *Id.* at 299. "Even if the order does not decide and conclude the rights of the parties, it nevertheless will be a final judgment if it terminates the proceedings in that court and denies a party the ability to further prosecute or defend the party's rights concerning the subject matter of the proceeding." *Id.* (citing *In Re Billy W.*, 386 Md. 675, 689 (2005); and *Brewster v. Woodhaven Bldg. & Dev., Inc.*, 360 Md. 602, 610 (2000)).

14

"[T]he key question is whether the order contemplates that the parties will no longer litigate their rights in that court." *Id.*

### 2. Remands as a Result of or Following Judicial Review vs. Remands Preceding Judicial Review

In this case, the order at issue is a remand from the circuit court to an administrative agency. Although a remand to an agency "may appear to be non-final in nature," many remands are, in fact, final, appealable judgments. *Id.* at 301.

When deciding whether an order remanding a case to an agency is a final judgment, Maryland's appellate courts have distinguished between "those remands that are a result of a circuit court's judicial review and those remands that precede judicial review." *Id.* at 302. As a general proposition, remands following or resulting from judicial review are final judgments, whereas remands preceding judicial review are not final judgments:

> [A] remand after a circuit court has conducted judicial review that precludes the parties from further contesting or defending the validity of the agency's decision in that court—and leaves nothing further for the court to do—is a final judgment. But not every remand to an agency terminates the proceedings in the circuit court. That will often be the case when the remand precedes any judicial review by the circuit court.

*Id.* at 304.

To illustrate what constitutes judicial review, it is perhaps easier to illustrate what does not constitute judicial review. Three Maryland cases provide scenarios where remands to an agency were not final because they preceded judicial review.

In *Hickory Hills Limited Partnership v. Secretary of State*, 84 Md. App. 677 (1990), the Secretary of State found that a developer had not complied with a promise to

15

spend a considerable sum on road improvements during a condominium conversion. The developer petitioned for judicial review in the circuit court. *Id.* at 679. Days before argument, the Secretary moved to remand the case so that he could take additional evidence. *Id.* When the parties appeared in the circuit court, the court heard the Secretary's motion to dismiss and "did not consider the substance of the appeal." *Id.* The circuit court remanded the case, and the developer appealed.

On the developer's appeal, this Court concluded that the decision to remand the case was not appealable, because it preceded judicial review. We found it relevant that, "[i]n granting the motion for a remand, the trial court expressly stated that it was not 'getting into the merits of the case.'" *Id.* at 684. Additionally, we noted that the trial court stated it was "not going to decide . . . [issues] [o]ther than the motion that's before the court." *Id.* In other words, this Court ruled that the remand was not a final judgment in part because the trial court expressly chose to ignore the merits of the case at oral argument.

In *Anne Arundel County v. Rode*, 214 Md. App. 702 (2013), a crossing guard was denied unemployment insurance benefits by the Board of Appeals of the Maryland Department of Labor, Licensing, and Regulation ("DLLR"). The crossing guard petitioned for judicial review, naming both the DLLR and her employer as respondents.

Before any hearing in the circuit court on the merits of the DLLR's decision, the DLLR moved to remand the case. The DLLR represented that it "wished to check over" the Board of Appeals' opinion, and "if necessary, to fine-tune it." *Id.* at 704. The agency's concern appears to have related to a discrepancy between the transcripts of the

proceeding and a recording of it. *Id.* at 706. The circuit court held a hearing solely on the remand issue and ordered the remand at the close of the hearing. *Id.* at 704-05.

On the crossing guard's appeal, this Court held that the remand order was not appealable as a final judgment. We noted at the outset that the remand request came "from the administrative agency itself[]" rather than the court or the aggrieved party. *Id.* at 705. We also noted that the DLLR requested the remand and that the court ordered the remand "before there had been any remote glimmer of consideration of the merits of the contested unemployment benefits." *Id.* at 705-06. We considered both facts "important criteria in distinguishing . . . non-final orders from final ones." *Id.* at 706. We concluded by emphasizing that the appeal was premature because the court ordered the remand "prior to any consideration of the merits by the circuit court and in response to a request by the DLLR itself[.]" *Id.* at 715.

The facts of *Metro Maintenance* are quite similar to those of *Rode.* In *Metro Maintenance*, a truck driver applied to the DLLR for unemployment benefits, alleging that his employer had mistreated him because of racial animus. *Metro Maint. Sys. South v. Milburn, Inc.*, 442 Md. at 294. A DLLR hearing examiner denied the truck driver's request for benefits, and he appealed the decision to the DLLR Board of Appeals. *Id.* The Board of Appeals declined to hear the appeal, "thereby adopting the decision of the hearing examiner as its own decision[.]" *Id.* at 295.

The truck driver sought judicial review in the circuit court. Instead of answering the truck driver's memorandum with one of its own, the DLLR did what it did in *Rode*— it moved to remand the case to the Board of Appeals so it could "review [its] decision in

17

the interest of 'judicial economy.'" *Id.* at 296. The circuit court held a hearing, at which "[t]here was no discussion of the agency record or the merits of the case." *Id.* The court remanded the case; the truck driver appealed; and in an unreported opinion, this Court held that the remand was not appealable as a final judgment.

On certiorari, the Court affirmed our ruling, employing reasoning similar to ours. In reaching its decision, the Court observed that "the work of the Circuit Court here is not done." *Id.* at 308. The Court added that "the remand order here contemplates that judicial review awaits the return of the case following the remand." *Id.* at 309. The Court concluded that the remand order—"issued prior to any judicial review of the agency's decision, at the request of the Board and with consent of the party that sought judicial review—[was] not a final, appealable judgment." *Id.* at 311.

The *Metro Maintenance* Court drew a distinction between cases where remand preceded judicial review and cases where a remand followed or resulted from judicial review. *Metro Maint. Sys. South v. Milburn, Inc.*, 442 Md. at 300-04. For example, in *Allen v. Glenn L. Martin Co.*, 188 Md. 290 (1947), the circuit court remanded a case to the Workers' Compensation Commission with instructions to recalculate the award using the correct statutory formula. In *Criminal Injuries Compensation Board v. Remson*, 282 Md. 168 (1978), the circuit court held that the board had misinterpreted a statutory exception and remanded the case for reevaluation of a claim for benefits in light of the court's interpretation of the law. In *Department of Public Safety and Correctional Services v. LeVan*, 288 Md. 533, 543 (1980), the circuit court remanded a case to the Sundry Claims Board for the reevaluation of a claim for compensation in light of factors

18

that the court identified and the court's interpretation of the governing statute. And in *Schultz v. Pritts*, 291 Md. 1 (1981), the circuit court remanded the case to a local zoning board because the board had erred in considering evidence submitted after the end of the hearing. "In each of these cases, [the] Court held that the remand order was an appealable final judgment." *Metro Maint. Sys. South v. Milburn*, 442 Md. at 304.

In summary, *Metro Maintenance* identified two relevant categories of cases: those that are not appealable because no judicial review had occurred before the remand and those that are appealable because the remand occurs after judicial review. This case, however, does not fall squarely into either category. As Broadway aptly stated in response to this Court's request for additional briefing on the issue of whether the circuit court's order is appealable, "The case at bar presents a situation that does not clearly fit any of the examples of final and non-final remands given in the *Metro Maintenance* opinion."

On one hand, this case resembles cases like *Metro Maintenance*, because the circuit court envisioned that the dispute in this case would return to the court for further judicial review once the tax court had done more to articulate the basis for its rejection of the reseller exemption. In that sense, the remand in this case did not "preclude[] the parties from further contesting or defending the validity of the agency's decision in that court" and "leave[] nothing further for the court to do[.]" *Id.* at 304.

On the other hand, this case is quite different from cases like *Metro Maintenance*, because the circuit court did not remand the case for further factual development, as it did in the cases in which the courts have held that a remand was not a final judgment.

19

Moreover, in contrast to those cases, where the agency sought the remand, the agency (the tax court) is not a party to this case, and neither party to this case requested a remand. Instead, the court ordered the remand on its own motion even though the parties evidently thought that the record was adequate for the court to render its decision, and even though the party who had sought judicial review—the Comptroller—opposed the remand.

In addition, as Broadway concedes, the circuit court's hearing on the merits of the tax court's decision "constitute[d] a 'review' in a colloquial sense." In contrast to what happened in cases like *Metro Maintenance*, the court in this case engaged in some measure of judicial review before it remanded the case. For example, the court considered and rejected the Comptroller's argument that the *Broadway II* Court had disposed of the reseller theory when it wrote that it "decline[d] to substitute its judgment" for that of the tax court, "especially regarding the applicability of the reseller exemption." Had the circuit court decided that issue in the Comptroller's favor, its decision would have obviated the perceived need for any remand to the tax court.

Furthermore, the circuit court asked many questions that went to the merits of whether Broadway resold the cleaning supplies and equipment to the hospitals. The circuit court also asked the parties several questions to limit the discussion of the merits to those that were still pending in light of the appellate courts' decisions. Only after the circuit court determined that it did not have enough information from the tax court to rule on the resale issue did the court decide to remand the case.

20

Finally, although the circuit court did not pass judgment on the substance of the tax court's decision, one could say that the circuit court reviewed the form of the decision and found it wanting on technical grounds. In essence, the circuit court remanded the case because it concluded that the tax court had erred by inadequately articulating the factual basis for its conclusion on the reseller issue. In that sense, the remand followed judicial review.

In the unusual circumstances of this case, we are satisfied that the circuit court's remand order is sufficiently final as to authorize the Comptroller's appeal. The court conducted judicial review before ordering the remand. Because the circuit court did not envision an expansion of the factual record, the remand order in this case is quite different from the orders that have been held to be unappealable in cases like *Metro Maintenance*.

In the strictest sense, this appeal presents the question of whether the circuit court erred in remanding the case on the ground that it was unable to ascertain the basis for the tax court's decision. We have jurisdiction to decide an appeal from such an order.[7]

_____

[7] Although practical considerations do not determine whether an order is a final judgment, those considerations would weigh in favor of concluding that the remand order is appealable. As previously noted (*see supra* n.6), the judge who decided the case in 2017 is no longer with the tax court. Consequently, the remand order requires a different judge—probably a judge who was not even on the tax court in 2017—to review the record and to discern and articulate what the original judge meant. In our judgment, the judges of this Court are as capable of performing that task as the tax court judge to whom the task would fall were the case to be remanded. Moreover, in an action for judicial review of an agency's decision, the appellate court looks through any decision by the circuit court and reviews the tax court's decision. *See, e.g.*, *Gore Enterprise Holdings, Inc. v. Comptroller*, 437 Md. 492, 503 (2014). Thus, if we can discern the basis for the

21

## B. The Law of the Case Doctrine

The Comptroller argues that the law of the case doctrine "prohibits further litigation of the resale issue in this subsequent appeal" because the *Broadway II* Court "already stated" that the tax court's resale decision should stand.

The Comptroller specifically cites the portion of the opinion that reads:

> Under this Court's general method of reviewing agency decisions, we cannot affirm the Tax Court's decision on *McShain* grounds because the Tax Court did not rely on *McShain* to reach its conclusion. *We decline to substitute our own judgment for that of the Tax Court, especially regarding the applicability of the reseller exemption, which is within the Tax Court's ambit and therefore entitled to deference.*

*Broadway II*, 478 Md. at 230 (emphasis added).

The Comptroller argues that, based primarily on this language, the *Broadway II* Court "squarely addressed the Tax Court's findings that no resale occurred." We disagree.

"The 'law of the case doctrine is one of appellate procedure' that stands for the principle that '[o]nce an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case.'" *MAS Assocs., LLC v. Korotki*, 475 Md. 325, 382 (2021) (quoting *Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 55 (2008)). The doctrine is based on the principle that "litigants cannot try their cases piecemeal." *Fidelity-Baltimore Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.*, 217 Md. 367, 371-72 (1958).

---

tax court's decision and determine whether the tax court erred in any way, it would be most efficient for us to do it now.

The *Broadway II* Court acknowledged that only one question was properly before it: whether Broadway was acting as an agent of the hospitals when it purchased the cleaning supplies and equipment. *Broadway II*, 478 Md. at 228. The reseller issue was not before the Court—the Court had not granted certiorari to consider that exemption. The Court had granted certiorari to consider the *John McShain* issue, but it ruled that that issue, too, was not properly before the Court—in fact, the Court specifically stated that *John McShain* was "not a basis upon which [it could] affirm the Tax Court's decision[,]" because that issue was not "'[a] ground[ ] relied upon' or an issue 'encompassed in the [tax court's] final decision[.]'" *Id.* (quoting *Dep't of Health and Mental Hygiene v. Campbell*, 364 Md. 108, 123 (2001)).

The Court proceeded to decide the *John McShain* issue even though that issue was not properly before it. The Court said that it did so "in the interest of judicial efficiency." *Id.* It based its decision on Maryland Rule 8-131(a), which permits an appellate court to decide an issue that was not "raised in or decided by the trial court" "if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Nowhere did the Court say that it would address the reseller issue.

The Comptroller's argument turns on the meaning of the Court's statement, "We decline to substitute our own judgment for that of the Tax Court, especially regarding the applicability of the reseller exemption, which is within the Tax Court's ambit and therefore entitled to deference." *Broadway II*, 478 Md. at 230. Because the Court "decline[d] to substitute [its] judgment" for that of the tax court and recognized that the tax court's conclusion was "entitled to deference," the Comptroller interprets the Court's

23

statement to mean that it tacitly affirmed the tax court's rejection of the reseller exception. We reject that conclusion for two reasons.

First, the "Conclusion" section of the opinion enunciates the Court's holdings. The Court held "that the Tax Court erroneously conducted its agency analysis as a matter of law." *Id.* at 234. The Court held "that *McShain* cannot serve as a proper basis to affirm the Tax Court . . . ." *Id.* The Court held that "[e]ven if the *McShain* arguments were properly before [the Court, it] would not affirm on those grounds . . . ." *Id.* The Court identified no other holdings in its "Conclusion" section. Had the Court affirmed the tax court's rejection of the reseller theory, it undoubtedly would have said so in the section of the opinion where it outlined its ruling in express terms.

Second, when the Court invoked Rule 8-131(a) to address issues that were not properly before it, it did so only in reference to *John McShain*. *Broadway II*, 478 Md. at 228. In the related context of Rule 8-131(b), which limits the Supreme Court's authority to review the decisions of Maryland's appellate courts, the Court has stated: "Case law and common sense indicate that when we exercise the discretion afforded under Maryland Rule 8-131(b)(1) to review a matter not raised in a petition for a writ of *certiorari* or cross-petition, we say as much." *MAS Assocs., LLC v. Korotki*, 475 Md. at 369. The Court did not "say as much" with respect to the reseller exemption. And because the reseller issue was not raised in Broadway's petition for writ of certiorari or

24

any cross-petition, the Court would have needed to state that it was exercising its discretion to review that issue under Md. Rule 8-131(b), which it did not do.[8]

The Court's comment that it "decline[d] to substitute [its] own judgment for that of the Tax Court, especially regarding the applicability of the reseller exemption," (*Broadway II*, 478 Md. at 230) served a different function from the one the Comptroller proposes. The Court knew that the reseller issue would continue to be litigated, because the Court affirmed the decision of this Court, which had allowed Broadway to seek judicial review of the tax court's rejection of the reseller theory if it so wished. *Broadway I*, 250 Md. App at 135. By "declin[ing] to substitute [its] own judgment for that of the Tax Court," the Court refrained from interfering with Broadway's ability to pursue judicial review of its reseller theory.[9]

The Court's discussion of the reseller theory is not the law of the case. Hence, we shall proceed to the merits of the Comptroller's appeal.

---

[8] The Comptroller did not file a cross-petition for certiorari concerning this Court's determination that "Broadway should not be foreclosed of the right to seek judicial review of the Tax Court's rejection of its reseller theory." *Broadway I*, 250 Md. App. at 135.

[9] At oral argument in *Broadway II*, Justice Biran asked counsel for the Comptroller whether Broadway would be able to obtain judicial review of the *John McShain* theory on remand should the Court not decide that issue. This line of questioning suggests that the Court decided the *John McShain* issue because of the possibility that Broadway might raise that issue in the future action for judicial review this Court had authorized it to pursue. The *John McShain* issue had been fully briefed and argued, and it was "in the interest of judicial efficiency" (*Broadway II*, 478 Md. at 228) for the *Broadway II* Court to decide the issue in order to limit the scope of any subsequent action for judicial review and appeal.

## C. The Merits of the Reseller Theory

TG § 11-101(h)(1)(i) defines a "[r]etail sale" as, among other things, "the sale of . . . tangible personal property[.]" Maryland imposes a sales and use tax on "a retail sale in the State" "[e]xcept as otherwise provided in" Title 11 of the Tax-General Article. TG § 11-102(a)(1).

One such exception is the resale exclusion. The Tax-General Article provides that the term "'[r]etail sale' does not include . . . a sale of tangible personal property . . . if the buyer intends to . . . resell the tangible personal property . . . in the form that the buyer receives or is to receive the property[.]" TG § 11-101(h)(3)(ii)(1).

Broadway contends that its delivery of cleaning supplies and equipment to the hospitals qualifies for the resale exemption because, it says, it "purchased these items with the intent to transfer them to the Hospitals in unchanged form in exchange for consideration." Broadway argues that, because it "did not use the supplies (or even touch them)," and because "the supplies went directly from the vendors to the Hospitals," the transactions do not qualify as retail sales.

The Comptroller argues that the tax court correctly rejected Broadway's resale exemption arguments. The Comptroller points out language in the contract between Broadway and the hospitals that requires Broadway to "provide" the cleaning supplies and equipment to the hospitals, not to sell the supplies and equipment to them. The Comptroller also points out that Broadway "did not introduce any invoices showing that it had sold the supplies to the Hospitals" and that Broadway did not "use any resale certificates" indicating that it had the intent to resell the supplies to the hospitals.

Broadway argues in its brief that we are "precluded from scouring the record to conjure reasons why the Tax Court could have rejected the reseller argument" because "an administrative agency can only be affirmed for the reasons stated by that agency." (citing *Classics Chicago, Inc. v. Comptroller*, 189 Md. App. 695, 707 (2009)) (emphasis omitted.)  Broadway claims that, as a result, we are constrained to consider "what the Tax Court actually said" when giving its oral opinion.

It is true that "in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." *United Steelworkers of Am. AFL-CIO, Local 2610 v. Bethlehem Steel Corp.*, 298 Md. 665, 679 (1984).  Whether Broadway resold the cleaning supplies to the hospitals, however, is a mixed question of fact and law—i.e., the product of the application of legal principles to a discrete set of facts.

We "review the Tax Court's mixed findings of fact and law for substantial evidence in the agency record." *Comptroller v. Johns Hopkins University*, 186 Md. App. 169, 181 (2009).  We affirm the tax court's mixed findings of fact and law if, "after deferring to the Tax Court's expertise and to the presumption that the decision is correct, 'a reasoning mind could have reached the Tax Court's conclusion.'" *Id.* (quoting *NCR Corp. v. Comptroller*, 313 Md. 118, 133-34 (1988)) (further internal citations omitted); *accord Tochterman v. Baltimore County*, 163 Md. App. 385, 407 (2005) (stating that, in applying the substantial evidence standard, the reviewing court must determine whether a reasoning mind reasonably could have reached the factual conclusion that the agency reached).  "Even if the Tax Court does not state the reasons for its decision, reversal is

27

not required 'if the record discloses substantial evidence supporting the decision.'" *Comptroller v. Johns Hopkins University*, 186 Md. App. at 181 (quoting *Bethlehem Steel Corp. v. Supervisor of Assessments of Baltimore Cty.*, 38 Md. App. 543, 546 (1978)); *accord Siegel v. Comptroller*, 186 Md. App. 411, 424 (2009).[10]

There was substantial evidence before the tax court to support its conclusion that Broadway did not resell the cleaning supplies and equipment. And, although the tax court admittedly did not provide much detail when issuing its oral opinion concerning the merits of the resale argument, its opinion makes clear that it rejected the argument for two reasons: Broadway did not present monthly invoices evidencing sales to the hospitals, and Broadway did not provide resale certificates to its vendors when purchasing the cleaning supplies. Given the deference that we afford to administrative agencies, we cannot say that the tax court erred in basing its decision on those two factors.

First, witnesses testified that Broadway did not charge the hospitals separately for the cleaning supplies and equipment, and the costs of the cleaning supplies and equipment did not show up as line items in any monthly invoices that Broadway sent to the hospitals. Broadway's president, Pete Seidl, testified that Broadway presented an annual budget to the hospitals. Then, Broadway billed the hospitals "one-twelfth of that budget each month." Besides cleaning supplies, the budget "includes salaries, benefits,

---

[10] At oral argument, Broadway took the position that, on the evidence presented, the tax court was required to find, as a matter of law, that Broadway was a reseller. Thus, under Broadway's view, we must affirm the tax court if there was any evidence from which a reasoning mind could conclude that Broadway was *not* a reseller.

. . . equipment, and a management fee." According to Mr. Seidl, Broadway does not provide invoices to the hospitals for the cleaning supplies and equipment that the hospitals receive every month, and Broadway does not charge separately for those supplies and equipment.

Thomas Tartal, the Comptroller's chief auditor, testified that, in his opinion, the intention to resell tangible personal property in and of itself does not establish a resale. Mr. Tartal testified that Broadway would also need to produce a resale certificate to its vendors, stating that "they were going to resell that product." Mr. Tartal said that resellers must submit a resale certificate at the time of purchase: "[t]he vendor needs to have that resale certificate on hand." Mr. Tartal was not aware of any proof that Broadway provided resale certificates to any vendors at the time of purchase.

Mike Kastendike, Broadway's chief financial officer, testified that Broadway does, in fact, issue resale certificates "on the fly" to different vendors. Mr. Kastendike agreed with counsel for Broadway that throughout Broadway's audit period it "used [its] certificate for purchases in which [it] thought [it was] entitled to a resale exemption." Counsel for Broadway offered into evidence a blank resale certificate form, which showed that Broadway has a sales and use tax registration number. The Comptroller "agree[d]" that Broadway had such a registration number but objected to the form's admission because the certificate "wasn't submitted to anyone." The tax court admitted the form into evidence "for what it's worth." Broadway did not offer any resale certificates that it had actually provided to vendors in connection with its purchase of cleaning supplies and equipment.

The tax court began its oral opinion by discussing the resale argument. The court dismissed Broadway's argument that it should not have to pay sales and use tax on its purchases of the cleaning supplies and equipment. The court remarked that it did not have any invoices to review, much less invoices indicating that the hospitals "purchased the [supplies and equipment]" from Broadway. Nonetheless, the court found that it was "pretty obvious" who "was billed directly" for the cleaning supplies and equipment. The court "assume[d]" that all the invoices "say that Broadway purchased the [supplies and equipment] with direct shipment to the hospital[s]." The tax court found that Broadway and the hospitals maintained a relationship whereby all the services and supplies and equipment were bundled together into one price that was then divided into twelve payments a year because "this was most convenient to [the hospitals]."

The court found it relevant that Broadway never provided any resale certificates to its vendors when purchasing the cleaning supplies and equipment. The court also found that "[t]he problem would have been solved in some ways if the invoices from the suppliers had mentioned [the hospitals are] the purchaser[s]" and if vendors "had a resale certificate[.]" But, the court found, Broadway "didn't do that."

Based on the lack of itemized and monthly invoicing and the lack of any resale certificates, the court rejected the proposition that Broadway resold the cleaning supplies and equipment to the hospitals. We hold that "a reasoning mind could have reached the Tax Court's conclusion." *Comptroller v. Johns Hopkins University*, 186 Md. App. at 181 (quoting *NCR Corp. v. Comptroller*, 313 Md. at 133-34) (further internal citations omitted). The contracts look more like contracts for the provision of services, one of

30

which includes the provision of cleaning supplies and equipment, than like contracts for

the resale of tangible goods.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER AN ORDER AFFIRMING THE DECISION OF THE MARYLAND TAX COURT. COSTS TO BE PAID BY APPELLEE.**